IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.     )<br>)<br>DARREN LEE WALKER,   )<br>  a/k/a "Dee,"   )<br>)<br>  Defendant.   )<br>) | CRIMINAL NO. 2:21-CR-89 |

## GOVERNMENT'S POSITION ON SENTENCING

The United States of America, through its attorneys, Jessica D. Aber, United States Attorney, and Amanda L. Turner and William B. Jackson, Assistant United States Attorneys, hereby submits its position with respect to the defendant's sentencing factors. In the Presentence Investigation Report (PSR) prepared in this matter, the United States Probation Office determined the applicable guidelines to be 292 to 365 months, based on a Total Offense Level of 35 and a Criminal History Category of VI. The defendant's guidelines are restricted to 240 months total because his guideline range is above the statutory maximum sentences of 120 months for each count in this case. In accordance with Section 6A1.2 of the Sentencing Guidelines Manual and this Court's policy regarding sentencing, the United States represents that it has reviewed the PSR and consulted with the Probation Office and defense counsel. The government has no objection to the content of the PSR. The defendant has objected to being listed as a member of the Williamstown Criminal Street Gang and the leader/organizer enhancement. These objections are addressed in Part III of this filing.

For the reasons outlined below, the United States respectfully submits that a sentence of 240 months would be sufficient, but not greater than necessary, to accomplish the goals of 18

U.S.C. § 3553(a).

I. **BACKGROUND**

On July 14, 2021, a federal grand jury sitting in Norfolk returned a twenty-five count indictment charging the defendant with Conspiracy, in violation of 18 U.S.C. §§ 371 and 2, False Statement During Purchase of Firearm, in violation of 18 U.S.C. §§ 922(a)(6), 924(a)(2), and 2, False Statement Causing Federally Licensed Firearms Dealer to Maintain False Records, in violation of 18 U.S.C. § 924(a)(1)(A) and 2, and Felon in Possession of Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On November 10, 2021, the defendant pled guilty to one count of Aiding and Abetting the Making of a False Statement During Purchase of Firearm, in violation of 18 U.S.C. §§ 922(a)(6), 924(a)(2), and 2, and one count of Felon in Possession of Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Co-defendants, Warren Harrison and Sherif Lassiter, pled guilty and were sentenced by this Court to 70 months imprisonment and 20 months imprisonment respectively. PSR ¶ 4-5.

II. **MOTION FOR ACCEPTANCE OF RESPONSIBILITY**

Under USSG § 3E1.1(b), the government moves the Court to grant an additional one-level reduction in the defendant's offense level for acceptance of responsibility. The defendant timely notified the government of his intention to enter a plea of guilty, thereby allowing the government to avoid preparing for trial and permitting the Court and the government to allocate resources efficiently.

III. **OBJECTIONS**

The defendant raises two unresolved objections to the PSR: his gang affiliation and the four-level enhancement for his leadership role in the conspiracy. None of the objections has

merit.

The government notes, at the outset, that the defendant bears the burden of establishing his objections to the PSR. "A mere objection to the finding in the presentence report is not sufficient." *United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990). Instead, a "defendant has an affirmative duty to make a showing that the information in the presentence report is unreliable, and articulate the reasons why the facts contained therein are untrue or inaccurate." *Id.* That has not been done here, as to any of the objections.

**1. Defendant's affiliation with rather than membership in a criminal street gang on PSR page 2 and PSR ¶ 12.**

The defendant objects to the gang affiliation identified on page 2 of the PSR. The PSR accurately reflects this information based on the information located in the defendant's phone and social media pages. The government will have an investigator present at sentencing to verify this information if necessary. Regardless, the Court need not make a ruling on this matter as it does not affect sentencing pursuant to Federal Rule of Criminal Procedure 32(i)(3)(B). The defendant's objection should be overruled.

**2. Leader/Organizer Enhancement**

The defendant was assigned a four-point enhancement for his role as a leader/organizer under U.S.S.G. § 3B1.1. PSR ¶ 13, 23. Section 3B1.1 provides that a defendant's offense level increases by four if he "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). The Statement of Facts easily establish that Darren Walker fits that description.

The Guidelines do not require the defendant to be "an organizer or leader of all participants involved in the criminal activity so long as he was an organizer or leader of one or more other participants." *United States v. Thorson*, 633 F.3d 312, 318 (4th Cir. 2011) (internal

quotation marks omitted). The application notes also provide "various factors for consideration in determining whether a defendant is an organizer or leader, such as the nature of the defendant's participation in the commission of the offense, the degree of participation in planning or organizing the offense, or the nature and scope of the illegal activity." *Id.*

The Statement of Facts and the PSR make clear that the defendant was a leader of this firearms trafficking conspiracy. First, the criminal activity involved five or more participants: there were at least two unindicted co-conspirators which were prohibited persons from possessing a firearm, and at least two unindicted co-conspirators who were utilizing the illegally obtained firearms in connection with felony offenses. PSR ¶ 13. Second, the defendant was the clear leader within the group, he recruited, provided instructions to, and paid the straw-purchasers. The defendant also traveled to outside localities and conducted the resale of the firearms. The straw-purchasers were not working independently. They purchased 20+ firearms for the defendant. They worked for the person who paid them, and that was the defendant.

## IV. ARGUMENT

In *United States v. Booker*, the Supreme Court made clear that sentencing courts should "consult [the Sentencing] Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005). The Supreme Court provided this direction to promote the sentencing goals of Congress, namely to "provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities." *Id.* (quoting 28 U.S.C. § 991(b)(1)(B)). In its recent decision in *Molina-Martinez v. United States*, the Court emphasized the role the guidelines play in achieving "[u]niformity and proportionality in sentencing" and noted that "the Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar." 136 S. Ct. 1338, 1347 (2017).

The Fourth Circuit has provided the following guidance in the wake of *Booker*: "A district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and" the 18 U.S.C. § 3553(a) factors "before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). So sentencing courts must consider the factors outlined in 18 U.S.C. § 3553(a), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A), (B).

    A.    **Nature of and Circumstances of the Offense**

From in or about August 2018 to in or about July 2020, the defendant, together and separately with co-conspirators participated in a straw-purchasing conspiracy wherein two indicted two co-conspirators purchased multiple firearms for the defendant, who then in turn transported the firearms from Hampton Roads to Baltimore, Maryland, and other cities where he would resell the firearms at a profit. PSR ¶ 1. The defendant provided the indicted co-conspirators with money to purchase the firearms and told them which firearms to purchase. PSR ¶ 4. All while the defendant was possessing and trafficking firearms, he knew that he was a convicted felon. PSR ¶ 6. The PSR attributes the defendant with being involved in the trafficking of a total of 30 firearms. PSR ¶ 11.

The defendant not only told the co-conspirators which firearms to purchase, he gave them the money which with to purchase the firearms, cementing his role as the leader of this conspiracy. The defendant also managed the resale of the firearms.

At least four of the straw-purchased firearms were recovered in Baltimore, Maryland, from individuals who were involved in either drug related arrests, were prohibited persons from

possessing firearms, or both, including the recovery of a firearm loaded with an extended magazine which was loaded with 27 rounds of ammunition. PSR ¶ 10.

Gun trafficking leads to more violent crimes, including murder, assault, and robbery. It also facilitates violent crime in states with more stringent gun regulations, like Maryland. "Nearly two-thirds of guns associated with crime in Baltimore come from out of state. And Maryland overall now has the highest rate of out-of-state crime gun 'imports' in the country, according to a 2020 analysis of tracing data from the Giffords Law Center to Prevent Gun Violence." Ron Cassie, *Iron Pipeline*, Baltimore Magazine, https://www.baltimoremagazine.com/section/community/ iron-pipeline-gun-violence-out-of-state-traffickers/ (last visited January 20, 2022). In fact, "[t]raffickers today bring nearly three times as many firearms into Maryland as the national state average, playing a deadly role in Baltimore's epidemic of gun violence." *Id.*

These "guns mostly flow up the I-95 corridor—'the Iron Pipeline'—because southern states have fewer restrictions on gun buying." *Id.* Indeed, "the biggest exporter of crime guns into Baltimore is Virginia, which has less restrictive guns laws than Maryland." *Id.* Specifically, "[m]ore than 1,000 crime guns recovered [in Baltimore] in 2019 traced back to Virginia alone." *Id.* The defendant played a significant and demonstrable role in contributing to the gun violence taking place in Baltimore by putting dangerous weapons into the hands of dangerous people. The government can say with specificity that some of the firearms that the defendant trafficked were directly involved in or put into the hands of individuals who previously committed violent crimes, others are still on the street.

B. **History and Characteristics of the Defendant**

The defendant is 34 years old. He was raised by his mother in Baltimore, Maryland. PSR

¶ 81-82. The defendant reported getting into physical altercations with his mother's husband (not his biological father) between the ages of 11 and 13. PSR ¶ 83. He reported running away from home frequently, staying out late with friends, and staying in friends' houses or in abandoned houses. Id. He reported daily use of marijuana, alcohol, and ecstasy as a teenager. PSR ¶ 103. The defendant fathered his first child at age 15. Id. As a result, he dropped out of high school after completing the 10th grade. PSR ¶ 83, 109. At 17 or 18 years old, the defendant moved in with his grandmother in the Williamstown area of Suffolk, Virginia. PSR ¶ 83.

The defendant has been involved with the criminal justice system since moving to the Williamstown area. He has spent half of his life, from the age of 17 until now, being charged with or convicted of a crime almost every year. PSR ¶ 33-80. Despite the defendant's lengthy criminal history, he has never served an active period of incarceration longer than one year. PSR ¶ 41. The defendant's criminal history includes charges and convictions for domestic assault, theft, disregarding court orders, failures to appear, eluding police, and disorderly conduct. The defendant's criminal history is full of drugs, violence, and firearms. The defendant has six children, two sons and four daughters, who range in age from 6 to 18 years old. PSR ¶ 89. The defendant has been charged with and/or convicted of assaulting two of the three mothers of his children. PSR ¶ 36, 39, 60, 61, 65, 68, 74. The defendant's most recent assault conviction was on March 30, 2021. The PSR indicates that the defendant told the mother of four of his children, "Yall b***** stay there, I'm gonna come and kill everybody." The mother of the defendant's four children recounted that the defendant "got in everyone's face and pointed guns," including her children. PSR ¶ 61. The defendant's history and characteristics show that he is prone to violence, that combined with his history of gang affiliation within the Williamstown area, is a very concerning combination.

### C. Other Factors to Be Considered Under Section 3553(a)

General and specific deterrence, the need to reflect the seriousness of the offense, promoting respect for the law, providing just punishment, and public safety all support the government's requested sentence. This defendant and others like him must be deterred from straw-purchasing firearms on such a large scale. A sentence of 240 months will promote the safety of multiple communities—Hampton Roads, Baltimore, and anywhere else these guns have ended up—and will account for the potential harm they can cause.

This sentence would also avoid sentencing disparities among the defendant and his co-conspirators, who were perhaps less culpable but just as knowledgeable about the potential consequences of their actions. The defendant's egregious criminal history and his personal efforts in trafficking these firearms further distinguish him from his co-defendants and favor a significant sentence, albeit one below the defendant's actual guidelines range.

## V. CONCLUSION

For the reasons stated above, and taking all the Section 3553(a) factors into account, the government respectfully submits that a sentence of 240 months is appropriate and not greater than necessary.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:         /s/
Amanda L. Turner
William B. Jackson
Assistant United States Attorneys
Attorneys for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Telephone: (757) 441-6331

        Facsimile: (757) 441-3205
       E-mail: amanda.turner@usdoj.gov
          william.jackson3@usdoj.gov

## **CERTIFICATE OF SERVICE**

 I hereby certify that on the 3rd day of March, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to:

> Sanita Swift Sherard, Esq.
> 205 South Battlefield Blvd., Suite 100
> Chesapeake, Virginia 23322
> Telephone: (757) 482-4224

 I hereby certify that on the 3rd day of March, 2022, I sent by electronic mail a true and correct copy of the foregoing to the following:

> Joshua A. Coleman
> U.S. Probation Officer
> 600 Granby Street, Suite 200
> Norfolk, VA 23510

> _____/s/_____
> Amanda L. Turner
> Assistant United States Attorney
> Attorney for the United States
> United States Attorney's Office
> 101 West Main Street, Suite 8000
> Norfolk, Virginia 23510
> Telephone: (757) 441-6331
> Facsimile: (757) 441-3205
> E-mail: amanda.turner@usdoj.gov